If it pleases the court, your honor, my name is Richard Hamlisch. I represent the appellant, Ronald Nardizzi, in this case. This case is many facets, but the ultimate issue in this case is whether a federal employee under NAFE, N-A-F-I, non-appropriated funds instrumentality, is precluded from any federal judicial review from an adverse employment action. That's the real issue in this case. Just a minute. For damages. Pardon? For damages. For damage and for equitable relief. Well, for equitable relief, you didn't, I mean, you threw something into your brief asking to amend for equitable relief, but you never previously sought to amend for equitable relief, right? It wasn't raised until the hearing, the final hearing with Judge Fitzgerald, and at that point in time, I talked about reinstatement, and he sort of dismissed it, and it was not in the complaint, but I raised it at the hearing. And there was a second complaint? There was a second. You were given leave to amend once? Yes. It was raised at the hearing. But 99 percent of the case has been about damages. We can talk, if you want, at some point about whether you should be given leave to amend for equitable relief, but I just wanted to correct the fact that you somewhat overstated what the case was about. Yes, you're absolutely correct. I would like to reserve three minutes for that. I guess the way to address this case is, number one, the Constitution, Article 3, Section 2, says federal courts have jurisdiction in all civil cases arising under the Constitution. It doesn't say that NAFI employees are precluded, but also the Congress, the Executive Branch, the Judicial Branch, interpret the Constitution in many ways. And one of the things that Congress has done, and when it acted, the APA, the Administrative Protection Act, it gave... The APA doesn't provide for damages. I'm sorry? The APA doesn't provide for... it's not a waiver of sovereign immunity for a damages action. No, I realize... The APA has nothing to do with this. Well, the APA included NAFI employees in its provisions. That's what I started to say. Whereas when the CSRA, the Civil Service Act, was enacted, they specifically excluded NAFI employees. Now, why they did that, I'm not going to even guess. I've looked through the hearings, and there's no specific reason why they excluded NAFI employees, but they did. So the NAFI employees don't have any benefits. And they also excluded judicial employees, and in Blankenship we said that you don't have a business action. And they excluded the... I think the Veterans Affairs is excluded. There's a number of... How could we come out differently than we did in Blankenship? That's my same question. How do we get around Blankenship in this case to get you to the relief that you want? Seems like Blankenship... Blankenship is a real problem for you. Because the 9th Circuit held, not too long ago, that court reporters don't have the very relief that you're now seeking. So why is the person who works at the, my term, in the mess hall or the dining hall, different than the court reporter? Because the court reporters have other remedies, other than CSRA remedies. NAFI employees don't have those remedies. Well, you had remedies. You didn't care for them, and you say they're unconstitutional, but you had remedies. The remedy we had, again, the remedy we had was to appeal, if you want to use the word, post-termination. In this particular case, there's a long history to why this case, why Mr. Nardisi was terminated, but in any case, he was given a notice. The charges were not, and as I specified in my brief, the charges were not specific. He didn't know what they were, who they were made by, or anything about it. When we asked for that, they gave us 90 pieces of paper, 92 pieces of paper, by about 15 employees who were interviewed as to things that happened. Counsel, now it seems like you're, now you're complaining about the process. So I guess the first question is, is that categorically, why is this situation different from Blankenship? And you said Blankenship got, had some sort of process where your client didn't. Are you saying that your client, as a matter of law, had no process, or that as a matter of fact in this case, the process was not properly followed? Both. Actually, as a matter of law, the process provided by the Navy was not adequate. That's number one. That's the personnel manual. That's the personnel manual. And I would call the court's attention, the Ninth Circuit case. Just one comment. As far as I could tell under Blankenship, she had, in fact, no process. You had some process. It appears from Blankenship that there was essentially nothing available. Is that wrong? I, I, I'm sorry, I can't answer the question, Your Honor. I, it's been a long time since I read Blankenship. Well then, it's a little odd since you're here arguing a case that directly depends on it. I, I, I understand, Your Honor. And I did not review Blankenship. As far as I can tell, she had absolutely no process. Go ahead. The, in any case, the, well, whether Blankenship had any process or didn't, or the holding in that case does not obviate the rights of Mr. Nardisi or any other federal employee. Because we're in, the, the fact that you're a federal employee, Blankenship may be wrong. I don't know. We're stuck with Blankenship. Pardon? We're stuck with Blankenship. This is a three-judge panel. So, you know, if you want to argue that the case, the court's taken in bank, that's a, that's a whole different thing. But Blankenship is, is the Bible as far as we're concerned in this case. Well, in, in, if, if Blankenship is the Bible, then I think that the, the, the, then, and this, this court has never addressed as the fourth and the third have addressed NAFTE employees, which are a separate category of employee. Okay, so, so. And I'm not sure that. That's a fair argument. You can say that was, that Blankenship was CSRA, this is NAFTE. And that's true. Right. They are different. So, but, but why is it a difference that matters? That's, that's what we need. Because for you to prevail in this case, at least from my perspective, you have to convince me that Blankenship is just a totally different animal and that there are other circuit authorities that are right on point. But we don't, we're not bound by those, but we are bound by Blankenship. So give me the roadmap to get by Blankenship. I don't think you're bound by Blankenship in a NAFTE environment. Okay. Why? Because it's an entirely different situation than in the, the, the, the, and I, I don't know whether court reporters in the federal court are Article 3 or Article 1 or Article 2. I don't know where they fall. Article anything. They're employees of a branch of the government. But, and I, what I'm saying is the, the NAFTE, NAFTE employees have been treated differently since the enactment of CSRA. They are a different category and in the, in the, in the system, in the, in all the cases, they say the same thing. Nothing. And two district court, circuit, circuits, the second, the third, and the fourth, they have said that, and I guess, I think it's a, the Mann case says they're not entitled to anything. Mr. Hamliss, could we get back for a moment to Judge Owen's question? I think I might have even interrupted you in answering it because I'm curious too as to which procedures you're objecting to because it seems to me that they follow the personnel manual procedures, but you're saying that those procedures are inadequate. That's correct. Am I correct? That's correct. But you acknowledged that there were procedures. There were, yes, there were procedures. Now, if the procedures were followed, would we have the same issues that we have here today? The procedures were not adequate, Your Honor. I think that that's where we differ. I'm just trying to figure out your argument. There were procedures in place. Yes. But you're saying that the procedures that were in place under the personnel manual were not followed. Is that right? Well, they were not followed, nor are they adequate. Tell me first how they're inadequate. Number one, they're post-termination rather than pre-termination. Number two, the person who hears the appeal from the post-termination appeal is the same person who terminates you. So if I were to be an employee of Your Honor, and you decide to terminate me. I guess that was the case because only, I guess, because he was as high up as he was. In other words, it's because the person who fired him was the head of the operation because he was a fairly high up guy. Right. For most people, it would not be the same person who fired him. I don't know that. Did anybody try to object and say, well, because of this circumstance, we should have somebody else? Yes, I did. And they didn't say, we can have somebody else? They didn't respond. They didn't respond at all. Ms. Williams, I wrote a letter to Ms. Williams and a letter to CO. No response. Did you try to file, did you ever ask in court for the relief that you want a different decision maker as equitable relief rather than damages? No, I did not, Your Honor. I never got that. That sounds like a viable cause of action. It might be. I hadn't thought about that, to be honest, to get a replacement for review of the termination. On the ground that there was a prospective denial of due process and you wanted an injunction to correct it. You didn't do that. I didn't do that, Your Honor. That's a possibility which I hadn't thought of. But going back to Your Honor's point, we believe the procedure is inadequate, at least in this case. And secondly, they didn't follow the procedure. So it's a two-step thing. The... Counsel, you said you wanted to reserve some time. Do you want to do that? Oh, yes, I'm sorry. Good morning, Your Honors. Assistant United States Attorney David Pincus representing the appellees and defendants. To be frank, it seems to me that the only question I have about this case is whether we should allow him at this juncture to remand, to allow him to amend the complaint to allege a claim for equitable relief. I know there are procedural problems. Would you agree that he would have a claim for equitable relief for denial of due process? No, I would not, Your Honor. Why not? First of all... Why doesn't the... Is it the FGE case? First of all, the Stone case says that there are two important factors, neither of which is present here, that the employee had no alternative remedies and also that he had a colorable constitutional claim. Well, I mean, here his claim is about the procedures. So it's kind of circular to say he had no remedy. His complaint is that his remedy was a constitutional violation. Your Honor, I believe there have been a number of misstatements that Mr. Hemlisch made that I need to correct. Well, but that's his claim. I understand that you don't agree with it, but that's his claim. No, the facts that he represented to you are not correct. First of all, this was never raised. The issue of equitable relief was never raised. I know that. I mean, I don't know that. I was going to ask you that second. But first I was trying to find out whether if it had been raised at the outset, would it be a viable claim? I don't believe it would. First of all, he did have a completely adequate remedy. He had a right to rebut the charges against him. He never did that. That was pre-termination. But that would be the decision on the claim. It wouldn't be whether he can raise it. I mean, in other words, if he could raise it, then the court could say you lose because you had a perfectly adequate claim. Well, the point, though, here is that he never tried to rebut the charges against him. All he did was say, I want a pre-termination hearing. He wanted to create his own administrative appeal process, something different than what was provided. And he basically said, if I don't get what I want, I'm not going to participate. I can't imagine how that could be a colorable constitutional claim. Also, with respect to post-termination remedies, there is no reason, it's complete speculation on Mr. Hamlisch's part, that Miss Williams would have been the hearing officer. Here's how it works. There's a step one grievance to the base commander, which is above Miss Williams. It's the base commander who picks the hearing officer. It's complete speculation that Miss Williams would have been the hearing officer. And I might add, that issue was never raised in either one of the plaintiff's complaints in this case. It was only put by Mr. Hamlisch in a brief. It's a complete, bald conclusion of counsel. There's nothing in the record to support that. And the other thing is that the commanding officer is not bound by the recommendations of the hearing officer. The hearing officer would hear evidence. They could cross-examine witnesses. He was entitled to have a lawyer. But the hearing officer would only make a recommendation, which the commanding officer was not required to accept. And then, in step two, if he didn't like the conclusion of the base commander, he could go to an individual in the headquarters of the Navy in Washington, the so-called Sink N-9. There might have been some confusion that because Miss Williams was the local N-9, that she's certainly not the Sink N-9, and I'm sure Mr. Hamlisch would agree with that. But the real point here is that Mr. Nardizzi never even asked for a post-termination hearing, and his claim seems to be premised on the idea that he had a constitutional right to a pre-termination hearing. That's not required under the Laddermill case, and this is a point that I keep making, but I have to make it again. Title V employees under CSRA are not entitled to a pre-termination hearing. They're entitled to notice and opportunity to be heard. And with respect to notice, if Mr. Hamlisch was not satisfied with the notice, he was given the 92 pages of documents, which had all the information. There's no reason why he couldn't have given a rebuttal. He just chose not to because, again, he wanted to create his own remedy, and that's just not a constitutionally required... We can't just let every employee decide for themselves what their remedy is going to be, their administrative remedy, and then say, if I don't get it, my constitutional rights have been violated. I completely agree with the Court that the Blankenship case is dispositive. Actually, the Court is correct. Blankenship had no administrative remedies whatsoever, and the Court Reporter is part of the accepted service under 5 U.S. Code 2103, and NAFI employees are considered federal employees for some things, but not for matters that are presided over by the Office of Personnel Management, and that's 5 U.S. Code 2105C. Actually, Mr. Nardizzi had more rights than the Court Reporter in Blankenship, and so there's no reason to distinguish the cases. I don't really have anything else to say. Okay. Thank you very much. Thank you very much. Oh, just that we ask that you affirm the district court. It would have been futile... Try to figure that out. It would have been futile for him to request an amendment of the complaint. Thank you very much. Thank you. We have 2 minutes and 19 seconds left on the clock. Just two things. Again, I have not reviewed Blankenship. I'm only relying on counsel's brief, which he filed, and in that brief, he mentions Blankenship. He cites Blankenship, and he says that Blankenship, that Congress provided an employee with certain benefits and withdrew others, such as review of adverse personnel decisions. Again, I haven't read Blankenship recently, but according to what counsel's brief says, that the Congress removed judicial review of federal court reporters. Now, whether that's true or not, I don't know, but that's what his brief says. Counsel, maybe it makes sense, after argument, if you want to read Blankenship and submit to the court a 28-J letter. Okay. Because, again, I think a number of us have expressed concern with your argument with Blankenship, and since you haven't read the case, why don't we move on? Okay. The only other thing is, as far as the utility of the post-termination hearing, is pre-termination we requested to interview the same people they interviewed. They refused to let us do that. They refused Mr. Dardissi access to the base. He was on leave. So our access to anything pre-termination was virtually nil, except what they provided us. And they didn't even provide us with when and how these things happened. They said conduct unbecoming unofficial. What does that mean? When, why, and how? No explanation. And to this day, they have never explained any of that. With that, I will submit your argument. Thank you very much. The case of Nardizzi v. Williams is submitted.
judges: Berzon, Owens, Marbley